UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH GREER, JR.,

    Plaintiff,

v.

SUSAN MCCORMICK, BARRETT
JONES, WESLEY SLAUGHTER,
THOMAS DOTSON, and DONOVAN
WALTON, in their individual capacities,

    Defendants.
_____/

Case No. 14-13596

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate
Judge

OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 3)

Before the Court is Defendants' Motion to Dismiss. (ECF No. 3.) Plaintiff filed a Response (ECF No. 5) and Defendants filed a Reply (ECF No. 7). The Court held a hearing on February 5, 2015. For the reasons that follow, the Court DENIES the motion to dismiss.

**INTRODUCTION**

In this 42 U.S.C. § 1983 action, Plaintiff claims that his employer ordered him to undergo a urine drug test without reasonable suspicion that he had used drugs on the job, in violation of his Fourth Amendment right to be free from an unreasonable search and seizure. Plaintiff further claims that Defendants violated his constitutional rights when they suspended and discharged him because he refused to submit to the requested urine drug test. Defendants respond that they did have a reasonable suspicion, based on a call to their public relations department from a news reporter who passed along an anonymous tip from someone who claimed to have seen an undescribed individual

1

smoking marijuana while sitting in a company-owned vehicle. Defendants seek dismissal of the case based upon qualified immunity. For the reasons that follow, the Court DENIES the motion to dismiss.

## I. BACKGROUND

The Plaintiff, Ralph Greer, began work with the City of Detroit in October 2000, and was transferred to the Detroit Department of Water and Sewage ("DWSD"). The DWSD is not a Defendant. The Defendants are employees of the DWSD: Susan McCormick was the director, Barrett Jones was the director of security, Wesley Slaughter was a Lieutenant in the security services, Thomas Dotson was the Principal Construction Inspector, and Donovan Walton was an Assistant Superintendent. (Compl. ¶¶ 11-16.)[1] Throughout his employment with DWSD, Greer worked as a Construction Inspector and drove a DWSD panel truck to various sites where private contractors performed construction and repair work for the DWSD. *Id*. ¶¶ 17-18. As of September, 2013, when the incident that led to Plaintiff's termination occurred, DWSD had published rules requiring employees to take drug tests when they were involved in accidents or when they returned from absences beyond a specified length. DWSD did not have a published policy requiring employees to submit to drug tests under any other circumstances. *Id*. ¶¶ 19-20.

On September 9 and 10, 2013, Greer was assigned to inspect a DWSD project in Wyandotte where a contractor was repairing a large water main on Fort Street. *Id*. ¶ 21. At some point on September 10 or September 11, 2013, Kevin Dietz, a reporter for Channel 4, told the DWSD's

---

[1] On this motion to dismiss, all facts are taken from Plaintiff's Complaint and are assumed true for purposes of this motion. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Director of Public Relations that an unamed person claiming to be a retired Detroit police officer said that he had seen an un-described City employee smoking marijuana in a City vehicle bearing a number that corresponded to the number on the vehicle that had been assigned to Greer on those days. Dietz refused to provide the DWSD director or any other DWSD official the name of the alleged informant or any further detail about what this unknown informant allegedly told him. *Id.* ¶¶ 24-25. Dietz informed the DWSD director of public relations that if the DWSD did not "take care of its business" that the DWSD would see its business on the evening news. Following Dietz's threat, the DWSD director of public relations called Defendant Jones, chief of security, who in turn called Defendant Slaughter, a lieutenant in the security services. Defendant Slaughter determined that Greer had been assigned to the DWSD vehicle with the number that Dietz said the unidentified person had reportedly seen. Based on this information, Defendant Slaughter directed Defendant Walton to order Greer to immediately go to a clinic to submit to a urine drug test. *Id*. ¶¶ 26-29.

On the advice of his union representative, Greer refused to obey Walton's order to undergo the drug test on the basis that the City officials had no authority to order him to submit to that test. Defendants Dotson and Walton then handed Greer a Notice of Suspension informing him that he was suspended for 29 days with a recommendation for discharge on the following charge:

> Possession, consumption, use of or being under the influence of alcoholic beverages, narcotics, habit-forming drugs, or any other potentially intoxicating or potentially impairing substance during working hours or on DWSD property (Employee refused to submit to a drug and alcohol screening).

Compl. ¶¶ 30-31. On October 7, 2013, Defendant McCormick signed a Notice of Discharge notifying Greer that the DWSD had concluded that he had used or possessed unlawful substances because he had refused to submit to the drug test that Slaughter and Walton had ordered. *Id*. ¶ 32.

3

Greer filed a grievance against his suspension and discharge through his union, the Association of Professional Construction Inspectors ("APCI"). *Id.* ¶ 33. On July 25, 2014, an arbitrator appointed under the contract between APCI and the DWSD rendered an Opinion and Award that held that the DWSD did not have "reasonable suspicion" for ordering the drug test and that the discharge of Greer violated the contractual prohibition of discipline without just cause. *Id.* ¶¶ 34-36; Ex. 3, Opinion and Award. The Arbitrator denied back pay because he concluded that under the collective bargaining contract Greer had a duty to obey the order to submit to the test even if the order was invalid and grieve it later. *Id.* ¶ 37; Opinion and Award 9-10. The Arbitrator specifically declared that he was not ruling on whether the order to submit to the test or the subsequent suspension and discharge for failing to take the test violated Greer's Fourth Amendment rights. *Id.* ¶ 38; Opinion and Award 9-10. As a result of the Arbitration Award, Greer was reinstated as a Construction Inspector on September 8, 2014. Compl. ¶ 39. Greer lost wages and benefits for the year from September 11, 2013 to September 8, 2014 and further alleges that he suffered emotional pain and suffering due to having to move in with family members, apply for public assistance and losing custody of his minor son due to his inability to keep his home. *Id.* ¶¶ 40-41. Greer now brings this action against the individual employees of the DWSD who ordered him to submit to the drug test and subsequently suspended and ultimately discharged him for failing to comply with that order. Greer claims that the Defendants lacked reasonable suspicion that he had engaged in illegal drug use while on the job and thus were without sufficient basis to order him to undergo a drug test. Defendants now move to dismiss the Complaint, arguing that it was not clearly established in September, 2013, that ordering an employee to undergo a drug test based on an anonymous tip, which was relayed second hand from a news reporter who had no first

hand knowledge of the facts alleged by the unidentified tipster, and who refused to identify his source, violated that employee's Fourth Amendment right to be free from an unreasonable search.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a

>complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III. ANALYSIS

The issue presented in this motion to dismiss is whether it was clearly established as of September, 2013, that ordering an employee to submit to a urine drug test based upon a tip from a news reporter that an anonymous source allegedly told him that some undescribed individual driving a DWSD vehicle was smoking marijuana in that vehicle, with no further corroboration, would violate that employee's constitutional right to be free from an unreasonable search. Defendants argue that it was not clearly established and that therefore, even assuming the truth of all of the allegations of Plaintiff's Complaint, they are entitled to qualified immunity because a reasonable public employee in their position would not have known that their conduct amounted to a constitutional violation.

There is no dispute that it was clearly established long before September, 2013, that a urine drug test constitutes a search that may be conducted only as permitted under the Fourth Amendment. *Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 371 (6th Cir. 1998). It was also clearly established that a suspicion-based drug test will pass constitutional muster only when it is "clearly based upon a finding of individualized suspicion." *Id.* at 385. The only issue for determination is whether it was clearly established that, on these facts, the Defendants lacked sufficient individualized reasonable suspicion to order Greer to undergo a urine drug test.

According to the allegations of Plaintiff's Complaint, the Defendant DWSD employees acted on a tip from a news reporter that he had received information from a source (allegedly a retired Detroit police officer), whom he refused to identify to the DWSD, informing the news reporter that he (the anonymous tipster) allegedly saw an individual (not described physically) "smoking

marijuana" in a DWSD vehicle. When DWSD checked the identity of the DWSD employee assigned to the described vehicle that day, Plaintiff was determined to have been assigned to that vehicle on that day. Based on this information, Greer was ordered to undergo a urine drug test. Greer was never asked to respond to the allegation before being ordered to undergo the test. According to the allegations of the Complaint, there was no effort to corroborate the anonymous tip or even to identify the alleged tipster before ordering Greer to submit to the urine test. There was no physical description of the occupant of the DWSD vehicle provided by this tipster, no information regarding the circumstances under which the tipster witnessed the alleged drug consumption - no details about how he came to observe the vehicle, how close he was to the vehicle or how he knew it was marijuana that was being consumed. While such details may or may not be revealed through the course of discovery in this case, at this pleading stage, the Court must accept the allegations of Plaintiff's Complaint as true. Those allegations reveal that Defendants ordered Greer to submit to a urine drug test on the basis of an uncorroborated anonymous tip relayed to the DWSD second-hand by a news reporter.

Defendants, relying on Fed. R. Civ. P. 10(c), urge the Court to add to the allegations in Plaintiff's Complaint additional facts that were not pled but that Defendants seek to attribute to Plaintiff's pleading because they appear in an Arbitrator's Report that Plaintiff attached to his Complaint. These "additional facts" are (1) that the news reporter allegedly conveyed to the DWSD public relations director that there was "video evidence and pictures" of this alleged infraction but the news reporter indicated that this "evidence" would not be provided to the DWSD and (2) that Greer had previously tested positive for marijuana at some undisclosed time following routine drug testing that Greer was required to undergo following an on-the-job accident.

8

Rule 10(c) provides in relevant part that any "copy of a written instrument that is attached to a pleading is part of the pleading for all purposes." However, "Rule 10(c) does not require a plaintiff to adopt every word within the exhibits [to the complaint] as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (internal quotation marks and citation omitted). This is particularly true when the statements that appear in the attachments are the self-serving statements of the defendants:

> Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document itself does not form the basis for the allegations, Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.

*Jones*, 521 F.3d at 561. Although there are no direct conflicts between the "additional facts" which Defendants seek to impute to Plaintiff's allegations and the allegations of Plaintiff's Complaint, Defendants do offer the facts to contradict Plaintiff's claim that the tip was completely uncorroborated. Defendants urge the Court to attribute to Plaintiff's pleading facts derived from statements made by the Defendants in the course of a grievance proceeding in which they were attempting to justify their decision to order Greer to undergo a urine drug test. As the Sixth Circuit has recognized, adopting such facts that contradict Plaintiff's pleading allows Defendants "impermissibly to question the evidentiary foundation of [Plaintiff's] complaint, thereby depriving [Plaintiff] of the presumption of truth to which [he] is entitled at this stage of the litigation." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 442 (6th Cir. 2012). *See also Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 634-35 (N.D. Ohio 2014) (refusing to adopt as true statements in an exhibit

9

attached to plaintiff's complaint that "called into question a fair number of plaintiff's allegations" because to do so deprived plaintiff of the "presumption of truth" to which a plaintiff is entitled at the pleading stage).

Even were the Court to adopt these "additional facts" under Fed. R. Civ. P. 10(c) as Defendants urge, it would not lead the Court to reach a different conclusion at this pleading stage. Defendants proffer the allegation that Jones, the DWSD chief of security, was "advised that videos and pictures were available, but that they would not be provided" to the DWSD. (ECF No. 7, Defs.' Reply 1.)  The DWSD asserts that the alleged existence of these undisclosed videos and pictures caused them to fear exposure in the news and somehow enhanced the reliability of the anonymous tip.  The Court disagrees.  If anything, this should have been an indication to Jones of the *unreliability* of the anonymous tip.  The DWSD was explicitly told by the news reporter that the alleged "videos and pictures" would not be provided, stripping this alleged evidence of any corroborating value whatsoever.  In fact, this refusal to produce the alleged video and photographic evidence should have raised further suspicion as to the reliability of the alleged anonymous tip.  This should have been even more striking when it was reported that the alleged tipster was allegedly an ex-police officer who, of all people, would know the unreliable nature of an unsubstantiated tip. Additionally, the statement by the DWSD human resource manager that Greer "knew of the [company's "zero tolerance drug policy"] insofar as he had previously been disciplined for a positive test," says nothing about the circumstances of that prior instance or its relation in time to the September, 2013 anonymous tip.  Greer had been working for the DWSD for over 13 years. Moreover, it is unclear whether the official who ordered that Greer undergo the drug test even possessed this information at the time he ordered the test.  The Court concludes that the

corroborating value of these "additional" facts, even had they been pled in Plaintiff's Complaint, is negligible and adds no support to the DWSD's claim that it possessed individualized reasonable suspicion sufficient to order Greer to submit to a urine drug test.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity requires the court to determine: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id*. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. In this case, Defendants rely solely on the "clearly established" prong.

The Sixth Circuit has adopted the following familiar analysis for determining whether a right is clearly established:

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, ––– U.S. ––––, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011)

> (citing *Saucier*, 533 U.S. at 201–02, 121 S.Ct. 2151). Thus, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).
>
> "We look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established when the action complained of occurred." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002) (citing *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993)). "[T]he case law must 'dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.' " *Id.* (quoting *Saylor v. Bd. of Educ. of Harlan Cnty.*, 118 F.3d 507, 515 (6th Cir. 1997)). Plaintiffs bear the burden of showing the claimed right was clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

*Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012). "'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, __F. App'x__, 2015 WL 968278, at * 11 (6th Cir. March 5, 2015) (quoting *al-Kidd*, 131 S. Ct. at 2083). The inquiry requires the Plaintiff to point to "controlling authority" or "a robust consensus of cases of persuasive authority" to demonstrate that the right was clearly established. *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 529 (6th Cir. 2013). In this case, the issue is whether it was clearly established in September, 2013, that it would violate an employee's Fourth Amendment right to be free from an unreasonable search to require him to submit to a urine drug test based solely upon an uncorroborated anonymous tip regarding the conduct of an undescribed individual in a company owned vehicle, allegedly backed up by photographic evidence that the tipster refused to disclose, that was relayed second hand to the employer by a news reporter with no first hand knowledge of the facts alleged by the tipster. The Court concludes that it was clearly established in September, 2013, that such a search was constitutionally impermissible and that, based on the facts as alleged

12

by Plaintiff, Defendants are not entitled to qualified immunity.

The parties agree that the issue presented is whether the Defendants had constitutionally supportable "reasonable suspicion" of on the job drug use when they made the decision to order Greer to undergo a urine drug test. This "reasonable suspicion" test, as applied in the public employer context, was articulated more than twenty years ago in *Smith v. White*, 666 F. Supp. 1085, 1089-90 (E.D. Tenn. 1987), *aff'd* 857 F.2d 1475 (6th Cir. 1988) (affirmed *per curiam* following briefing and oral argument "based on the reasoning of the district court"):

> It is now clear that a urinalysis is a search and seizure within the meaning of the Fourth Amendment. *McDonell v. Hunter*, 809 F.2d 1302, 1307 (8th Cir. 1987); *National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 176 (5th Cir. 1987); *Lovvorn v. City of Chattanooga*, 647 F. Supp. 875, 879 (E.D. Tenn. 1986). The Fourth Amendment proscribes only unreasonable searches and seizures. Whether a search is unreasonable depends on the context within which it takes place. *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 741, 83 L.Ed.2d 720 (1985). In the case of searches conducted by a public employer, a determination of reasonableness requires a balancing of the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control and the efficient operation of the workplace. *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714, 724 (1987).
>
> The balancing process requires a determination as to whether the urinalyses were justified at their inception. The governmental interest in having a drug free work force to protect and operate the most vital areas of a nuclear power plant is patently obvious. This Court and others have held that drug urinalyses may be conducted when there is "reasonable suspicion." *See Lovvorn v. City of Chattanooga*, 647 F.Supp. at 881; *National Treasury Employees Union*, 816 F.2d at 117. The Court rejects plaintiffs' contention that the defendants could not have had "reasonable suspicion" with respect to any of them unless actual observed behavior indicated that their job performance was influenced by drugs. Reasonable suspicion is a lesser standard than probable cause. There is reasonable suspicion when there is some articulable basis for suspecting that the employee is using illegal drugs. *Lovvorn*, 647 F.Supp. at 881. Put another way, there is reasonable suspicion when there is some quantum of individualized suspicion as opposed to an inarticulate hunch. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Lovvorn*, 647 F. Supp. at 882. Reasonable suspicion may be based on statements made by other employees and tips from informants. Even probable cause can be based on

>informants' tips when the totality of the circumstances indicates a fair probability of accuracy. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In this case, the defendants had no reason to doubt the statements of Lieutenant Daniel and other employees. The defendants even checked out part of the information obtained from Daniel insofar as it was possible to do so without compromising the secrecy of this investigation. The information which TVA officials had formed an ample basis for their conclusion that they had reasonable suspicion to test the plaintiffs.

666 F. Supp. at 1089-90. More recently, in *Knox County*, the Sixth Circuit found that the County's suspicion-based drug testing policy "sufficiently limit[ed] the discretion of the officials administering the rule" and was "clearly based upon a finding of individualized suspicion," thus "comport[ing] with the reasonableness requirement of the Fourth Amendment." Although Plaintiff in this case does not challenge a DWSD policy, it is notable that none of the requirements in the Knox County policy would have permitted a search based on an uncorroborated anonymous tip. Indeed, none of the requirements in the policy approved in *Knox County* permitted officials to rely on "tips" of any type.

Plaintiff relies on several cases discussing the concept of "reasonable suspicion" in the context of criminal stop and detain cases.[2] In that context, it has long been established by Supreme

---

[2] Defendants assert in their reply that the "criminal search and detainment cases have no bearing on what constitutes 'reasonable suspicion' to drug test a public employee." (ECF No. 7, Defs.' Reply 3.) Curious then that Defendants cite such criminal cases in their brief when defining the reasonable suspicion standard that they submit should be applied in this case. *See* Defs.' Mot. 6 (citing *Terry v. Ohio*, 392 U.S. 1 (1968) and *Delaware v. Prouse*, 440 U.S. 648 (1979)). In fact, these criminal cases have informed the debate on public employee drug testing since the Sixth Circuit affirmed the district court in *Smith* in 1988. *Smith*, affirmed without opinion and "based on the reasoning of the district court," 857 F.2d 1475 (6th Cir. 1988) (table case), expressly relied on *Terry*, the quintessential stop and frisk case, when determining the standard to be applied in the public employee context. Defendants are wrong to suggest that the "search and detainment" cases have no bearing on the "reasonable suspicion" inquiry in the public employee context. A right is clearly established when "[t]he reasoning, though not the holding, of a prior court of appeals decision puts law enforcement on notice, or when the premise of one case has clear applicability to a subsequent set of facts." *Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003) (internal quotation marks and

Court and Sixth Circuit precedent that uncorroborated anonymous tips, standing alone, cannot form the basis for reasonable suspicion to stop and detain. "Unlike known or identified informants, anonymous tipsters, without more, cannot be deemed reliable regarding their allegations." *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003) (citing *Florida v. J.L.*, 529 U.S. 266, 268 (2000)). "[A] right is clearly established when '[t]he reasoning, though not the holding,' of a prior court of appeals decision puts law enforcement officials on notice, or when the "premise" of one case "has clear applicability" to a subsequent set of facts." *Feathers*, 319 F.3d at 850 (quoting *Hope v. Pelzer*, 536 U.S. 730, 743 (2002)) (first alteration added). It was clearly established in this Circuit in September, 2013, at a minimum through *Smith*, *Terry, J.L.* and *Feathers,* that public officials had an obligation to establish the reliability of an anonymous tip before conducting a search based on the information provided in that tip. Even more so when the anonymous tip, which itself contains insufficient individual details, is relayed second hand by a news reporter with no first hand knowledge of the events allegedly relayed by the tipster. Defendants concede that in the context of information

---

citation omitted). It is well established that the reasonable suspicion cases in the criminal stop and detain context do have relevance in this context and it has been clearly established since at least 1988 in this Circuit that these cases should inform the decision of a public official ordering a drug test of an employee based upon individualized "reasonable suspicion." Even though there may not be a Supreme Court or Sixth Circuit case expressly holding that an anonymous tip in the context of a public employee drug test cannot supply the necessary reasonable suspicion, the premise of the stop and detain cases have "clear applicability" in the public employee context. "[A] right can be clearly established even if there is no case involving "fundamentally similar" or "materially similar" facts." *Feathers,* 319 F.3d at 850 (alteration added). As early as 2003, the Sixth Circuit had acknowledged that "[t]he Supreme Court had emphasized the importance of establishing the reliability of anonymous tips in 1990 . . . and had re-affirmed that principle in *[Florida v. ]J.L.*, [529 U.S. 266 (2000)], decided just a few months before this incident." *Feathers*, 319 F.3d at 851 (alteration added). In fact, as discussed *infra*, Defendants concede that such "tips" cannot stand alone and must have some degree of corroboration.

15

relayed as a tip, the Court must consider "the nature of the tip and the degree of corroboration."[3] (Mot. 5 quoting *Security & Law Enforcement Employees Dist. Council 82 v. Carey*, 737 F.2d 187, 205 (2d Cir. 1984)). It goes without saying that an anonymous tip, that is one that comes from a source that is completely unknown to the public official, lacks any degree of corroboration. In this case, according to the allegations of Plaintiff's Complaint, the DWSD officials never learned the identity of the alleged anonymous "tipster." Plaintiff alleges that the news reporter who contacted the DWSD refused to identify the "tipster" who had allegedly witnessed an "undescribed" individual in a DWSD vehicle smoking marijuana. While the DWSD may have known the news reporter, the news reporter had witnessed nothing and was passing on an anonymous tip, one that could not be tested or corroborated as the tips were in both *Smith* and *Knox County*. Notably, the "tip" did not indicate any identifying information, i.e. gender or race, about the individual seated in the DWSD vehicle and did not explain how the tipster determined that the individual was smoking marijuana. In this case, the anonymous source did not contact the DWSD directly but allegedly contacted a news reporter who contacted DWSD to relay the observations of the anonymous tipster, whom the news reporter alleged was an ex-police officer but whom he refused to identify. The "tip" was unable to be corroborated in any way. By contrast, in *Smith*, the identity of the individuals providing information about the plaintiffs was known to the company representatives and they were relaying information that they claimed to have gained from first hand knowledge - not from some unnamed

---

[3] Although the DWSD did not have a suspicion-based testing policy, as early as 1988, the Model State Drug Testing Statute provided that reasonable suspicion could be based upon a "report of drug use provided by a reliable and credible source[] and which has been independently corroborated." Evans, Model State Drug Testing in Employment Act (Pittstown, NJ 1988). *See also Ford v. Dowd*, 931 F.2d 1286 (8th Cir. 1991) (police superintendent cannot require officer to submit to drug testing based on an unsubstantiated rumor). This is simply a proposition that was too evident even to be questioned as of September, 2013.

source whom they refused to identify.

The Court concludes that it was clearly established in September, 2013, that an uncorroborated anonymous tip, even if purportedly backed up by *undisclosed* photographic evidence, relayed second hand by a news reporter with no first hand knowledge of the facts alleged by the tipster, did not provide individualized reasonable suspicion sufficient to require an employee to submit to a urine drug test. Accordingly, Defendants are not entitled to qualified immunity, at this pleading stage, accepting as true the allegations of Plaintiff's Complaint.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss.

IT IS SO ORDERED.

                                                               s/Paul D. Borman
                                                                PAUL D. BORMAN
                                                                UNITED STATES DISTRICT JUDGE

Dated: March 13, 2015

---

[4] Defendants offer no response to Plaintiff's argument that the motion should be denied because the law was clearly established in 2013 that public officials could not suspend or discharge an employee for a refusal to submit to an unlawful search. In support of this argument, Plaintiff relies on *Clemente v. Vaslo*, 679 F.3d 482, 492 (6th Cir. 2012), which recognized as a broad proposition that "public employees cannot be given a stark choice between asserting a constitutional right and keeping their jobs." Finding that the employees in *Clemente* were never actually forced to choose between complying with their employer's order or losing their jobs, the Sixth Circuit noted that "[w]hat is clearly established is only that public employers may not coerce their employees to abdicate their constitutional rights on pain of dismissal . . . ." *Id*. at 492. Here, it is unclear from the facts alleged in the Complaint that Greer was told before he declined the urine test that a failure to comply would be considered a positive result and would result in his termination. In any event, given the Court's resolution of the qualified immunity issue, it need not decide, and does not decide, this second asserted ground for denial of the motion to dismiss.

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 13, 2015.

                                        s/Deborah Tofil
                                        Case Manager